IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


EDUCADORES PUERTORRIQUEÑOS,
et al.,

    Plaintiffs,

    v.

HON. CESAR REY HERNANDEZ,
et al.,

    Defendants.

CIVIL NO. 03-2304 (RLA)


**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Defendants have moved the Court to enter summary judgment on their behalf and to dismiss the outstanding claims asserted against them. The Court having reviewed the evidence submitted by the parties as well as the applicable law hereby rules as follows.

    This action was instituted by Educadores Puertorriqueños en Accion ("Educadores"), an association composed of Department of Education personnel, as well as 19 individuals[1] formerly employed at the English Immersion Laboratory and Spanish Redaction School ("English Immersion School") located at Ramey Base in Aguadilla.

---

[1]   These are: (1) Manuel de J. de Jesus Mendez Soto, (2) Luz. E. Soto Paz, (3) Frances Rodriguez Aviles, (4) Janet Roldan Rodriguez, (5) Maria de C. Perez Ayala, (6) Arlinda Lopez Rodriguez, (7) Juanita Velazquez Velazquez, (6) John Pizzini Medina, (9) Rodrigo Vargas Vargas, (10) Sarah Zapata Vega, (11) Luz Enilda Perocier Rios, (12) Ivan Feliciano Miranda, (13) Evelyn Colon Badillo, (14) Abdin H. Jaime Mercado, (15) Uriel Velazquez Hernandez, (16) Luis Daniel Muñiz Cortes, (17) Maria I. Figueroa Ramirez, (18) Mayra Valentin Hernandez, and (19) Miguel A. Gonzalez Pratts. An additional two plaintiffs named in the complaint subsequently dropped their claims. *See*, Partial Judgment Dismissing Claims of Mayra Mendez Quiñonez (docket No. 31) and Partial Judgment Dismissing Claims of Ivette Luciano Carlo (docket No. 42).

Plaintiffs claim they were dismissed, demoted or illegally transferred from the English Immersion School to other positions due to political discrimination and without due process considerations in violation of their rights under the First, Fifth and Fourteenth Amendments of the United States Constitution actionable under 42 U.S.C. § 1983. Additionally, plaintiffs allege violations of the Puerto Rico tort provisions, art. 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31, § 5141 (1990) and Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 (2002) ("Law 100") the local discrimination in employment statute.

Named defendants are the following individuals who, at the time, were employed by the Puerto Rico Department of Education in the following capacities: Cesar Rey Hernandez, former Secretary of Education, Ana Helvia Quintero, former Deputy Secretary of Education, Carlos Ivan Morales, Regional Director for the Mayaguez-Aguadilla Region, Ines Journet, former Director of the Immersion Program, Roberto Velez, Superintendent of the Aguadilla Education District and Jaime E. Alvarado, former Interim Director of the Immersion Program.

Plaintiffs demand both compensatory and punitive damages as well as equitable relief.

Defendants have raised the following grounds in support of their request for dismissal of parties and/or claims: (1) Educadores lacks standing to represent its members in this suit; (2) certain claims are time-barred; (3) plaintiffs have failed to establish a *prima*

*facie* case of political discrimination under the First Amendment; (4) plaintiffs have no property right entitled to due process protection; (5) defendants are protected by qualified immunity; (6) Law 100 is inapposite, and (7) the court should decline to exercise supplemental jurisdiction.

### SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law.

CIVIL NO. 03-2304 (RLA)                                          **Page 4**

Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge

to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

### FACTUAL BACKGROUND

The English Immersion School was founded in 1998 as a bilingual boarding school for children from all over Puerto Rico with the purpose of developing the students' English language skills.

The Popular Democratic Party (PPD) - favoring Commonwealth status - won the elections in November 2000 defeating the New Progressive Party (NPP) - promoting statehood.

During the 2000-2001 school year, the English Immersion School offered courses to approximately 300 students from 10th to 12th grades.

Commencing January 2001, there were rumors circulating among the faculty members regarding the possible closing down of the school by the new administration.

In March or April 2001, codefendant Jaime E. Alvarado, Interim Director of the Immersion Program at the time, delivered to the teachers a transfer and reassignment form to be filled out by them due to the uncertainty regarding the next school year.

On April 24, 2001, a press release issued by Ana Helvia Quintero indicated that: the English Immersion School was undergoing both a fiscal and administrative evaluation process; no new students would be admitted in the 2001-2002 school year and 11th and 12th grade students would attend school Monday through Friday from 8:00 a.m. to 3:00 p.m. with an extended program from 3:00 p.m. to 5:00 p.m. commencing in August 2001. In other words, the school would be operating with a regular schedule as opposed to a live-in system.

As a practical consequence, this measure excluded all students not residing in the school's immediate geographical area which entailed a drastic reduction in both student enrollment and staff.

In June 2001, plaintiffs and other teachers of the school attended a meeting in Rincon with codefendants Roberto Velez, Jaime Alvarado, Carmen Sanchez and Carlos Ivan Morales to discuss their relocation process pursuant to their respective transfer requests.

CIVIL NO. 03-2304 (RLA)                                          **Page 7**

---

According to plaintiffs, no explanation was offered at the time regarding the future plans for the program except that apparently there was no money to keep operating the school as a boarding institution and not sufficient enrollment to retain the teachers.

In August 2001, the decision was taken to reopen and maintain the English Immersion School. Pursuant thereto, during that same month defendants engaged in a new effort to re-staff the school. Plaintiffs herein were not notified nor considered for those positions.

The School closed in August 2002 apparently due to the diminishing student enrollment.

On April 16, 2002, Educadores as well as 16 individuals[2] filed Civ. No. 02-1578 (HL), a class action. On June 7, 2002, plaintiffs filed an amended complaint in that case adding another three plaintiffs.[3] Both pleadings identified Cesar Rey Hernandez, then Secretary of Education of Puerto Rico, as sole named defendant but also listed "Persons A to Z" as unnamed defendants "who were active participants in the events subject of this Complaint that are not identified at this moment." ¶ 17.

---

[2] These were: Manuel de Jesus Mendez Soto, Luz E. Soto Paz, Frances Rodriguez Aviles, Janet Roldan Rodriguez, Maria del C. Perez Ayala, Arlinda Lopez Rodriguez, Juanita Velazquez Velazquez, John Pizzini Medina, Rodrigo Vargas Vargas, Sarah Zapata Vega, Luz Enilda Perocier Rios, Ivan Feliciano Miranda, Evelyn Colon Badillo, Abdin H. Jaime Mercado, Ivette Luciano Carlo and Mayra Mendez Quiñonez.

[3] These were: Uriel Velazquez Hernandez, Luis Daniel Muñiz Cortes and Maria Figueroa Ramirez.

On October 15, 2003, plaintiffs sought leave to further amend the complaint to add Mayra Valentin Hernandez and Miguel A. Gonzalez Pratts as plaintiffs as well as Ana Helvia Quintero, Carlos Ivan Morales, Roberto Velez and Jaime E. Alvarado as defendants. Leave was denied on October 22, 2003 as untimely as well as the fact that plaintiffs had already been allowed to amend the pleading.

Plaintiffs moved for a voluntary dismissal which was granted by the court pursuant to a Judgment of dismissal without prejudice filed on December 4, 2003.

The claims asserted in the previous case were virtually identical to those presently before us.

The complaint in this case was subsequently filed on December 8, 2003.

### STANDING

Defendants contend that Educadores has no standing to bring this action on behalf of its members. Plaintiffs, on the other hand, argue that Educadores "may represent its members in their educational and economic interests, plus [Educadores'] own interests."[4] Thus, Educadores purports to assert claims both on its own behalf as well as on behalf of its members.

The doctrine of standing emanates from Article III of the U.S. Constitution which limits the court's authority to entertain suits

---

[4] Plaintiffs' Opposition to Defendants' Motion for Summary Judgment (docket No. 73) ¶ 1 p. 5.

to situations where a "case or controversy" is present. Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Further, "[the] party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In order to meet the standing criteria plaintiff must prove: (1) an actual or threatened injury, (2) causation and (3) redressability. Vermont Agency of Natural Resources v. United States, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Bonas v. Town of North Smithfield, 265 F.3d 69, 73 n.4 (1st Cir. 2001).

First, plaintiff must show that he has "a sufficiently personal stake in the issue" Becker v. Fed. Election Comm'n, 230 F.3d 381, 385 (1st Cir. 2000) in that he "personally has suffered some actual or threatened injury as a result of the challenged conduct." Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir. 1997). Thus, he carries the burden of presenting evidence of having suffered "an 'injury in fact' [a harm that is] (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical". Friends of the Earth, 528 U.S. at 180 (citing Lujan, 504 U.S. 555 at 560-561); Vermont Agency of Natural Resources, 529 U.S. at 765.

Second, there must be a causal connection between the purported injury and defendant's acts or omissions. This alleged harm must be

CIVIL NO. 03-2304 (RLA)                                    **Page 10**

"fairly traceable to the challenged action of the defendant." Friends of the Earth, 528 U.S. at 180; Vermont Agency of Natural Resources, 529 U.S. at 771.

Lastly, plaintiff must establish that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision", Friends of the Earth, 528 U.S. at 181; Vermont Agency of Natural Resources, 529 U.S. at 771, by way of "the declaratory, injunctive and[/or] monetary relief requested." Weber v. Cranston Sch. Comm., 212 F.3d 41, 47 n.11 (1st Cir. 2000).

According to the complaint, Educadores is a bona fide association organized under the laws of Puerto Rico composed of Department of Education personnel which endeavors to seek and protect the best economic conditions of its members.[5] The only assertion made by Educadores in this action is that "as an institution [it] suffered economic losses and future development damages caused by Defendants."[6] There is no allegation - much less any evidence in the record - of any actual or threatened injury to the Organization resulting from defendants' acts or omissions. This conclusory statement by itself does not meet the injury and causation requirements for Asociacion to demand its own alleged damages in this case.

Additionally, an association may bring suit on behalf of its members regardless of whether or not it can claim an individual

_____

[5]  Complaint ¶ 5.

[6]  Id.

injury. "'Even in the absence of injury to itself, an association may have standing solely as the representative of its members'" <u>Council of Ins. Agents & Brokers v. Juarbe-Jimenez</u>, 443 F.3d 103, 108 (1st Cir. 2007) (*citing* <u>Warth v. Seldin</u>, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The representational capacity standing of an association is limited to situations where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." <u>Hunt v. Washington State Apple Advertising Com'n</u>, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); <u>Council of Ins. Agents</u>, 443 F.3d at 108; <u>Pharm. Care Management Ass'n v. Rowe</u>, 429 F.3d 294, 306 (1st Cir. 2005).

No allegation appears in the complaint pertaining to Educadores' representational capacity. Moreover, even if there was, any such claim would fail inasmuch as the damages sought by the individual plaintiffs herein require their own intervention.  It is impossible for the trier of fact in this case to evaluate the damages prayed for in the complaint by each of the named plaintiffs unless they personally take part in the proceedings.  It is evident that not all plaintiffs sustained the exact same damages.  This determination will depend on the particular circumstances attendant to each one in

particular which, in turn, demand their participation. *See i.e.*, Hatfield Bermudez v. Rey, 245 F.Supp.2d 383, (D.P.R. 2003).

Based on the foregoing, we find that Educadores does not have standing to prosecute either its own claims or the claims of its members in these proceedings. Accordingly, its claims are hereby **DISMISSED.**

## TIMELINESS OF CLAIMS

Three separate arguments have been raised in support of defendants' timeliness defense.

In their motion, defendants contend that all of plaintiffs' claims are time-barred in that the previous suit was filed after the one-year limitations period had expired. Movants further argue that except for Cesar Rey, the claims asserted against the other defendants in this action are time-barred. In support thereof, defendants point to the fact that Mr. Rey was the only named defendant in Civ. No. 02-1578(HL). Lastly, petitioners propose that the claims of those plaintiffs not named in the original pleading in Civ. No. 02-1578(HL) are untimely.

## Statute of Limitations

Because § 1983 has no express limitations period the most analogous state statute of limitations as well as its tolling provisions will be applied to § 1983 actions. Hardin v. Straub, 490 U.S. 536, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) and Chardon v. Fumero-Soto, 464 U.S. 650, 103 S.Ct. 2611, 78 L.Ed.2d 663 (1983);

Marrero-Gutierrez v. Molina, 491 F.3d 1, 2 (1st Cir. 2007). In this jurisdiction the one-year period applicable to personal injury actions found at P.R. Laws Ann. tit. 31, § 5298(2) (1990) has been determined as the pertinent statute of limitations for § 1983 claims. Villanueva-Mendez v. Nieves-Vazquez, 440 F.3d 11, 15 (1st Cir. 2006); Gonzalez-Alvarez v. Rivero-Cubano, 426 F.3d 422, 425 (1st Cir. 2005); Andino-Pastrana v. Municipio de San Juan, 215 F.3d 179, 180 (1st Cir. 2000); Aybar v. Crispin-Reyes, 118 F.3d 10, 15 n.6 (1st Cir. 1997); Muñiz-Cabrero v. Ruiz, 23 F.3d 607 (1st Cir. 1994); Lafont-Rivera v. Soler-Zapata, 984 F.2d 1 (1st Cir. 1993); Rodriguez Narvaez v. Nazario, 895 F.2d 38 (1st Cir. 1990). The underlying premise for the limitations period is to protect both the defendants from having to defend from distant events as well as those affected individuals who timely prosecute their claims. Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 70-71 (1st Cir. 2005); Morris, 27 F.3d at 750.

Pursuant to P.R. Laws Ann. tit. 31, § 5303 (1990), one of the options available for tolling the one-year statute of limitations is by instituting judicial proceedings. The tolling takes effect by the mere filing of the complaint - without regard to service of process or the fact that the court may eventually be found to lack jurisdiction - and lasts until the judicial proceedings have finally concluded. Martínez Arcelay v. Peñagaricano, 145 D.P.R. 93 (1998); Agosto v. Municipio de Rio Grande, 143 D.P.R. 174 (1997); Durán-

CIVIL NO. 03-2304 (RLA)                                    **Page 14**

Cepeda v. Morales-Lebrón, 112 D.P.R. 623 (1982); Moa v. Commonwealth, 100 P.R.R. 572, 589 (1972).

"[A]fter tolling comes to an end, the statute of limitations begins to run anew." Chardon v. Fumero-Soto, 462 U.S. at 661. Once the judicial proceedings have "definitely" ended, the full one-year term will commence to run anew.  Silva-Wiscovich v. Weber Dental Mfg. Co., 119 D.P.R. 550, 562 (1987); Durán-Cepeda, 112 D.P.R. at 625 & 630.  *See also*, Rodriquez Narvaez, 895 F.2d at 43 (once tolled, the full one-year limitations period commences anew).

Although the local provisions are utilized for determining the length of the statute of limitations period in § 1983 claims, federal law governs the date when the limitations period begins to run. Villanueva-Mendez, 440 F.3d at 15; Gonzalez-Alvarez, 426 F.3d at 425-26; Rivera Ramos v. Roman, 156 F.3d 276, 282 (1st Cir. 1998).

The accrual period will ordinarily commence "when the plaintiff knows, or has reason to know, of the injury on which the action is based." Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997) (citation and internal quotation marks omitted). "In a § 1983 claim, the statute of limitations generally begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the claim." Gonzalez-Alvarez, 426 F.3d at 426 (citation and internal quotation marks omitted). The limitations period for § 1983 claims begins to run when the aggrieved party knows or has reason to know of the injury which is the basis for his action." Vistamar, 430 F.3d at

70 (citation and internal quotation marks omitted). "Accrual commences, for federal law purposes, when a plaintiff knows, or has reason to know, of the discriminatory act that underpins his cause of action." Villanueva-Mendez, 440 F.3d at 15 (citation and internal quotation marks omitted).

The "proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (italics in original). *See also*, Ruiz-Sulsona v. Univ. of Puerto Rico, 334 F.3d 175, 159 (1st Cir. 2003) (term begins to run from discrete adverse employment act, *i.e.*, termination, failure to promote, denial of transfer or refusal to hire); Andino-Pastrana, 215 F.3d at 180 (action untimely inasmuch as plaintiff waited over a year from the date he was aware of the allegedly discriminatory transfer to file suit) Morris, 27 F.3d at 749; ("The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action"); Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353 (1st Cir. 1992) (accrual "when employee reliably knew he had lost his job" not when formal notice was given).

"It is the clarity of the notice received, not whether it is memorialized on official stationery or reduced to writing, that

determines the accrual of causes of action premised upon wrongful deprivation of employment under section 1983... In other words, the accrual date for purposes of a section 1983 employment discrimination case is the date when the employee reliably knew he had lost his job, not the date when the employer dotted a particular 'i' or crossed a particular 't'." *Id.*

The fact that the discriminatory reasons are yet not known at the time an adverse action is taken does not affect the running of the limitations period. In other words, a claim does not remain in "a state of suspended animation until [plaintiff] bec[omes] aware of the ... political motives behind the adverse employment decision." Morris, 27 F.3d at 249-50. *See i.e.*, Marrero-Gutierrez, (court rejected plaintiff's argument that claim accrued at the time plaintiff learned the discriminatory reasons behind his demotion rather than the date of the actual demotion).

### Accrual of Claims

In ascertaining the appropriate accrual time in this case, the court must initially identify "the actual injury of which the plaintiff complains" that is, "the relevant injury". Vistamar, 430 F.3d at 70 (citation and internal quotation marks omitted).

Even though plaintiffs allege that they were "dismissed", "demoted" or "illegally" transferred from the English Immersion

School due to political discrimination[7] in essence, their claims are limited to their transfers from the institution which they themselves requested. Defendants argue that inasmuch as the injuries complained of stem from plaintiffs' transfers the proper accrual date is March 2001, when they petitioned relocation. Plaintiffs do not directly address this argument in their opposition.

As previously noted, the original suit was filed on **April 16, 2002.** Thus, we must determine whether plaintiffs' claims based on their transfers accrued within a year prior thereto.

It is uncontested that all plaintiffs in this case completed a Relocation Form no later than **March 30, 2001,**[8] requesting that they be transferred from the English Immersion School to other schools and that they were all transferred to teaching positions with identical base salaries to other parts of the Mayaguez Region.[9]

"A claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself and not at the point that the

---

[7]  The pertinent allegations in the complaint charge that plaintiffs were subject to: "[p]olitically motivated demotion and involuntary transfer" ¶ 3; "demoted or involuntary transfer (sic) and demotion" ¶ 7; "involuntary transfer and demotion" ¶ 11; "transferred and demoted" ¶ 11; "illegal transfer and demotion" ¶ 12; "dismissals, demotions or illegal transfer and emotions (sic) ¶ 18; "demoted, illegally transferred" ¶ 19; "involuntary transfer, demotion" ¶24; "transfer, demotion" ¶ 31; "demotion and transfer" ¶ 32(a) and Prayer ¶ b.

[8]  A Memorandum issued by Cesar Rey on March 12, 2001 spelled out the procedure for teachers to request transfers and set March 30, 2001 as the final deadline for filling out the pertinent transfer form.

[9]  However, because the English Immersion School was a boarding institution, plaintiffs were paid additional monies for the extra time demanded of their services.

CIVIL NO. 03-2304 (RLA)                                          **Page 18**

harmful consequences are felt. In the employment discriminatory context, [the First Circuit] has rejected the contention that claims do not accrue until the plaintiff knows of both the injury and the discriminatory animus." Marrero-Gutierrez, 491 F.3d at 3 (citations omitted); Vistamar, 430 F.3d at 70; Morris, 27 F.3d at 750-51; Gonzalez-Garcia v. P.R. Elec. Power Auth., 214 F.Supp.2d 194, 200 (D.P.R. 2002).

Accordingly, we find that plaintiffs' claims accrued at the time they petitioned transfer from the English Immersion School. Therefore, their § 1983 claims are untimely. However, even if they were timely filed, plaintiffs still face dismissal of the complaint on other grounds.

### Additional Plaintiffs

The issue regarding the timeliness of the claims asserted by plaintiffs not parties to the original pleading in Civ. No. 05-1578 (HL) but included in these proceedings can be easily disposed of inasmuch as class certification was petitioned in the previous suit although never ruled upon.

The class sought to be certified in Civ. No. 05-1578 (HL) consisted of: "Puerto Rico Department of Education's English Immersion School of Aguadilla teachers and personnel[10] assigned with the majority given permanency as tenured teachers and employees...

---

[10]   The previous litigation sought to also include the parents and students as part of the class.

CIVIL NO. 03-2304 (RLA)                                              **Page 19**

who has (sic) been harmed by Defendants politically motivated actions."[11] "This action applies to some 30 public career non public policy making teachers and employees of the Department of Education... who indirectly were affected and harmed by Defendants['] actions."[12]

"[C]ommencement of a class action suspends the applicable statute of limitations as to all asserted members of a class who would have been parties had the suit been permitted to continue as a class action. The statue of limitations remains tolled until class certification is denied, notwithstanding the reasons for denial." Rivera-Torres v. Rey-Hernandez, 352 F.Supp.2d 152, 155 (D.P.R. 2004) (internal citations omitted). *See also*, Chardon v. Fumero Soto, 462 U.S. at 661 ("unnamed class members [given] the same protection as if they had filed actions in their own names which were subsequently dismissed"); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (statute of limitations suspended by commencement of class action suit for all putative class members and "remains tolled for all members of the putative class until class certification is denied.")

It appearing that those plaintiffs not originally included in Civ. No. 05-1578 (HL) fall within the putative class sought to be

---

[11]  Complaint ¶ 7.

[12]  Complaint ¶ 8. *See also*, ¶ 9 ("Potential Plaintiffs are of (sic) some approximately 30 teachers and employees of the Department of Education.")

certified in those proceedings, they benefit from the tolling effected by that suit. Accordingly, their claims are not time-barred.

### Defendants not Originally Named in Complaint

Additionally, movants contend that the claims asserted against the individually-named defendants - except for Cesar Rey - are untimely inasmuch as none of them were ever made parties to Civ. No. 05-1578 (HL). The complaint filed in Civ. No. 05-1578 (HL) named Cesar Rey, both in his personal and official capacities, as a defendant. The pleading also asserted claims against unknown employees and officers of the Department of Education purportedly liable for the deprivation of plaintiffs' rights.

On October 15, 2003, plaintiffs attempted to identify the unknown defendants in Civ. No. 05-1578 (HL) via a third-amended complaint, which was rejected by the Court as having been filed outside its established deadline. Subsequently, plaintiffs moved for voluntary dismissal which was granted by the Court via Judgment filed on December 4, 2003. Thereafter, this suit was filed and the five additional defendants named for the first time.

Although a common practice, the Federal Rules of Civil Procedure do not specifically address the use of unknown defendants - traditionally referred to in the pleadings as "John Doe". This practice has frequently come to the attention of the courts in the context of whether or not having included a "John Doe" defendant effectively tolls the limitations period pursuant to the provisions

of Rule 15(c) Fed. R. Civ. P.  *See*, Carol M. Rice, *Meet John Doe: It is Time for Federal Civil Procedure to Recognize John Doe Parties*, 57 U. Pitt. L. Rev. 883 (1996).

Fed. R. Civ. P. Rule 15(c) allows for amendments to the complaint to correctly identify a defendant.  However, in order for the substitution to relate back to the date of filing of the original complaint: (1) the amendment must have arisen from the same transaction as the original pleading, (2) the newly-named defendant must have received notice of the claim prior to expiration of the term to serve the complaint, i.e., 120 days from having filed suit, and (3) but for a mistake in identity plaintiff would have named the substituting defendant in the original pleading.  Leonard v. Parry, 219 F.3d 25 (1st Cir. 2000).  The current Puerto Rico provision for amendments to the complaint mirrors its federal counterpart.[13]

Rule 15(c)(1) also provides for amendments to pleadings to relate back if "permitted by the law that provides the statute of limitations applicable to the action".

Puerto Rico Rule 15.4, P.R. Laws Ann. tit. 32, App. III (1990) allows for the institution of suits against unknown parties. In pertinent part it reads:

> Whenever a plaintiff does not know the true name of a defendant, he shall so state in the complaint, setting

---

[13]  *See*, Puerto Rico Rule 13.3, P.R. Laws Ann. tit. 32, App. III (1990).

forth the specific claim he allegedly has against said defendant.  In said case, the plaintiff may designate said defendant in any pleading or proceeding with a fictitious name, and upon discovery of the true name, he shall forthwith make the corresponding amendment in the pleading or proceeding.

In situations where the plaintiff knows the identity of the person liable for the relief claimed but not his true name he may sue the unknown defendant pursuant to Puerto Rico Rule 15.4 provided the pleading so indicates. In order to be found liable, however, the unknown defendant must be properly identified before judgment is entered so that he be given sufficient opportunity to defend. Under those circumstances, the substitution will relate back to the date when the complaint was originally filed even if the amendment falls outside the limitations period. Padin Espinosa v. Compañia de Fomento Industrial de P.R., 150 D.P.R. 403 (2000); Martinez Díaz v. E.L.A., 132 D.P.R. 200, 211 (1992); Ortiz Díaz v. R. & R. Motors Sales Corp., 131 D.P.R. 829, 834 (1992); Núñez v. Jiménez, 122 D.P.R. 134, 142 (1988).

Further, under Puerto Rico legal principles, plaintiff must be diligent in procuring the substitution.  Unless service of process upon the unknown defendant is effected within six months from filing of the complaint or plaintiff justifies an extension of this term

CIVIL NO. 03-2304 (RLA)                                    **Page 23**

claims against unknown defendants shall be dismissed with prejudice. Núñez, 122 D.P.R. at 143.

Plaintiffs argue that the mere inclusion of the John Doe defendants in the previous federal suit automatically operates as a tolling to their claims against the five additional defendants named in this case. However, relation back to avoid the lapse of the limitations period is an exception to the general rule that claims become stale by the mere passing of time. *Id.* at 139. The relation back mechanism set in place by both the federal and local rules is established in the context of substitution of a party defendant. In other words, under both the federal and local provisions[14] it is exclusively by virtue of the identification of the unknown defendants in the pleading that the filing of a complaint may have any effect on the statute of limitations. That is, only if and when substitution of a party defendant is authorized because all pertinent procedural requirements have been met[15] that relation back kicks in.

Based on the foregoing, because the unknown defendants described in the first federal suit were never identified in those proceedings

---

[14] Thus, even assuming that P.R. Rule 15.4 is applicable, *see* Pagan Velez v. Laboy Alvarado, 145 F.Supp. 146, 154 (D.P.R. 2001) (application of Rule 15(c)(1) "not inconsistent with federal law")); Ocasio v. Betancourt, 146 F.R.D. 34, 38 (D.P.R. 1992) (no need to resort to local law provisions if amendment allowed under federal rule) and Francis M. Dougherty, J.D., *Rule 15(c), Federal Rules of Civil Procedure, or State Law as Governing Relation Back of Amended Pleading*, 100 A.L.R. Fed. 880 (1990) the final result would be the same.

[15] Relation back is not automatic. Certain factors must be present either under Rule 15(c) Fed. R. Civ. P. or Rule 15.4 P.R. R. Civ. P. for tolling to be effective. These include time limits to provide notice, i.e., 120 days or 6 months from filing of the complaint, respectively.

prior to judgment of dismissal, there can be no relation back and hence no effect on the lapse of the statute of limitations as to the individual codefendants except for Cesar Rey. Accordingly, the claims asserted against (1) Ana Helvia Quintero, (2) Carlos Ivan Morales, (3) Ines L. Journet, (4) Roberto Velez and (5) Jaime E. Alvarado are hereby **DISMISSED.**

### SECTION 1983

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). The statute, i.e., § 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.'" Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (*citing* Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001); Collins v. Nuzzo, 244 F.3d 246 (1st Cir.

2001); Dimarco-Zappa v. Cabanillas, 238 F.3d 25, 33 (1st Cir. 2001); Cruz-Erazo, 212 F.3d at 612; Barreto-Rivera, 168 F.3d at 45.

There does not seem to be a controversy regarding the "state action" requirement in this case. Plaintiff claims due process and First Amendment violations.

### Political Discrimination

"The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions." Marrero-Gutierrez, 491 F.3d at 7. See also, Pequero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (Non policy-making government employees are "protected from adverse employment decision based on the employee's political affiliation."

In order to determine whether or not a plaintiff was the victim of objectionable political patronage we must follow the Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route which places the initial burden upon plaintiff who must present "sufficient direct or circumstantial evidence from which a jury reasonably may infer that [his] constitutionally protected conduct - in this case political affiliation... was a substantial or motivating factor behind [his] dismissal." Pequero-Moronta, 464 F.3d at 45 (citation and internal quotation marks omitted); Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2004); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir. 2005); Padilla-Garcia v. Rodriguez, 212 F.3d 69,

74 (1st Cir. 2000). *See also*, <u>Marrero-Gutierrez</u>, 491 F.3d at 7 ("party affiliation was a substantial or motivating factor behind a challenged employment action"; <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 110 (1st Cir. 2003) ("political affiliation was a substantial or motivating factor in the decisional calculus"); <u>Figueroa-Serrano v. Ramos-Alverio</u>, 221 F.3d 1, 7 (1st Cir. 2000) (constitutionally protected conduct substantial factor in the decision).

"If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation," <u>Gomez</u>, 344 F.3d at 110; <u>Nieves-Luciano</u>, 397 F.3d at 4; <u>Mercado-Alicea</u>, 396 F.3d at 51, "commonly referred to as the *Mt. Healthy* defense." <u>Padilla-Garcia</u>, 212 F.3d at 74. *See also*, <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 133 (1st Cir. 2005) (political discrimination claims "subject to the burden-shifting analysis developed after *Mt. Healthy*").[16] In other words, "defendant must show that the decision would have been the same even in the absence of the protected conduct." *Id*. at 132 (citation omitted).[17]

---

[16]  Contrary to Title VII discrimination suits, "in a First Amendment political discrimination case, in which the *Mt. Healthy* scheme is applicable, the burden of persuasion shifts to the defendant, and the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the [adverse action] would have occurred in any event for nondiscriminatory reasons." <u>Peguero-Moronta</u>, 464 F.3d at 46. *See also*, <u>Cepero-Rivera</u>, 414 F.3d at 132 n.1 ("unlike Title VII cases, the burden of persuasion actually shift to defendants after plaintiff establishes a *prima facie* case.")

[17]  Defendants in this case reserved their arguments regarding the decision surrounding the future of the school for a later time, if warranted.

A plaintiff carries the burden of presenting sufficient evidence to establish a causal connection between his/her political affiliation and the challenged employment action. "On top of several subsidiary layers of causation, there is an ultimate constitutional question of 'but for' causation... proof of an improper motive is not sufficient to establish a constitutional violation - there must also be evidence of causation. Accordingly, when a public employee shows that protected [conduct] was a 'motivating factor' in the adverse employment decision, *the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct*." Sanchez-Lopez, 375 F.3d 121, 130-31 (1st Cir. 2004) (italics in original).

Merely juxtaposing plaintiff's political affiliation with a claim that plaintiff was treated unfairly will not suffice to meet the causation requirement. Marrero-Gutierrez, 491 F.3d at 10; Pequero-Monta, 464 F.3d at 45; Padilla-Garcia, 212 F.3d at 74; Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990). Similarly, the mere fact that the defendants charged with the discriminatory conduct belong to a different political party is insufficient for plaintiff to meet its burden and avoid summary disposition of a patronage claim. Figueroa-Serrano, 221 F.3d at 7-8; Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1172 (1st Cir. 1988). An "assertion about statements of political affiliation – unaccompanied by any specific factual information to support [a political

discrimination] claim, and unrelated to any employment action taken by [defendant] against [plaintiff] - is patently insufficient to establish an act of political discrimination." Lopez-Carrasquillo, 230 F.3d at 414. *See also*, Pequero-Moronta.

Even though "temporal proximity between a change in political administrations and an adverse employment action is relevant to the issue of whether political affiliation was substantial or motivating factor in the adverse employment decision... [*m]ere* temporal proximity" is insufficient. *Id*. at 53 (citation and internal quotation marks omitted, italics in original).

"A plaintiff must typically make four showings to prove a case of political discrimination: (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) sufficient evidence whether direct or circumstantial that political affiliation was a substantial or motivating factor and that the challenged employment action stemmed from politically based animus." *Id*. at 48 (citation and internal quotation marks omitted).

Plaintiffs presuppose that their transfers constitute adverse personnel actions for purposes of their First Amendment claims even though their relocations were generated by their own requests. They seem to rely on the "uncertainties" surrounding the future of the school to somehow transform their decisions into involuntary ones.

CIVIL NO. 03-2304 (RLA)                                        **Page 29**

Even assuming this argument is legally sound, plaintiffs still fail in their First Amendment claim because there is no evidence that they were all NPP members and/or that Cesar Rey knew their respective political affiliations. *See*, <u>Gonzalez de Blasini v. Family Dep't</u>, 377 F.3d 81, 85 (1st Cir. 2004) (plaintiff did not meet her prima facie burden by failing to adduce evidence that defendants knew she was an NPP member). According to plaintiffs, the new administration wished to discontinue the program because it was an NPP project. They contend that the PPD had a "traditional and historical obsession... against English language teaching in Puerto Rico... [which] created a public awareness that all English language schools as AIS were to be eliminated".[18] *Ergo*, by the mere fact of being employed at an English speaking school all plaintiffs herein were purportedly

---

[18] Plaintiffs' Opposition (docket No. 73) p.29. This argument is based in part on the opinion of David Malave, a purported expert witness, whose competency to testify on this subject is questionable.

identified with the NPP administration.[19] We find this argument unconvincing.

Initially, we must note that the uncontroverted evidence shows that not all plaintiffs are affiliated with the NPP. At least three of the plaintiffs testified that they were affiliated with the PPD[20] and eight indicated that they were either not affiliated with any political party or were apolitical.[21]

---

[19] "It was considered that those of us who were... from the Immersion Program were NPP." Sarah Zapata Vega depo. Tr. 48; "I always thought that since we worked here and that it was a project created under [the] NPP administration, we were associated with that party." Mayra Valentin Hernandez depo. Tr. 45; "They saw that we were chosen to work at that school, that you had to know English... so they said he must be NPP." Uriel Velazquez Hernandez depo. Tr. 36; "[They linked me with, with the NPP, specifically, for working in Immersion, that was a project created by the New Progressive Party" Maria del C. Perez Ayala depo. Tr. 52; "[T]he discrimination... consisted of (sic) the fact that the school shut down, it was affiliated with a previous administration; it was linked to a previous administration." Maria I. Figueroa Ramirez depo. Tr. 45-46; "Since I was part of a special program that was established by... the administration of the New Progressive Party, I believe that I was linked to all the people who participated in it". Janet Roldan Rodriguez depo. Tr. 48; "I belonged to a project which was created by the NPP party, so when the new administration takes over, it's normal in Puerto Rico to eliminate everything the previous administration had created. So, it's not a secret that being part of that administration makes me [an NPP]." Miguel A. Gonzalez Pratts depo. Tr. 102. According to Luis Daniel Muñiz Cortes, Cesar Rey discriminated against him because he did not take steps to ensure the continuity of the program. Depo. Tr. 93.

[20] Luz E. Soto Paz depo. Tr. 42-44; Maria I. Figueroa Ramirez depo. Tr. 26 and Evelyn Colon Badillo depo. Tr. 27.

[21] Sarah Zapata Vega (not affiliated and "work[ed] with any party) depo. Tr. 42; Mayra Valentin Hernandez ("never affiliated with any political party" and did not reveal her political affiliation to anyone) depo. Tr. 42; Uriel Velazquez Hernandez (not affiliated and non-activist) depo. Tr. 36-38; Rodrigo Vargas Vargas (never identified himself with any political party) depo. Tr. 27; Arlinda Lopez Rodriguez (no political affiliation or particular political ideology - did not participate in political activities) depo. Tr. 36 & 42; Juanita Velazquez Velazquez (apolitical) depo. Tr. 45-46; Janet Roldan Rodriguez (not affiliated with any political party) depo. Tr. 44; Evelyn Colon Badillo (not active in politics).

Of those who claimed to be NPP members, two indicated they were not politically active[22] and even as to those who claimed to be NPP activists there is no evidence that Cesar Rey knew them or was aware of their political affiliation.[23]

The arguments proffered by plaintiffs have been previously disallowed by the Court of Appeals as insufficient. For instance, in Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006) the court turned down plaintiff's argument of an inference of political affiliation based on her employment with the previous administration. In Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 37 (1st Cir. 2004) the court found that (1) the fact that plaintiff, an NPP, had met the PPD mayor during a routine campaign canvassing and identified herself as such, (2) her NPP activities and (3) her positions held under the previous administration were not sufficient to raise an inference that her political affiliation was known to defendants. Similarly, in Gonzalez de Blasini, 377 F.3d at 85-86, the

---

[22] Miguel Gonzalez Pratts (not active in politics and did not discuss politics at work) depo. Tr. 24-25; Frances Rodriguez Aviles (affiliated but not activist) depo. Tr. 28. Maria del C. Perez Ayala also indicated that she never talked about politics and was not politically active. However, the translation of her deposition transcript was not filed even though it appeared listed in Defendants' Motion Submitting Translated Documents (docket No. 77).

[23] See i.e., John Pizzini Medina (never met Cesar Rey nor was there any reason for Cesar Rey to know his political affiliation) depo. Tr. 74 & 78; Miguel Gonzalez Pratts (no reason why Cesar Rey should know his political affiliation) depo. Tr. 106; Abdin Jaime Maldonado (did not know Cesar Rey personably nor is there any reason why Rey should know he is NPP) depo. Tr. 143. Frances Rodriguez Aviles indicated that Cesar Rey should know of her political affiliation by the mere fact that she was one of the initial faculty members. Depo. Tr. 66.

court rejected a claim that defendants "must have been aware of [plaintiff's] political affiliation because she was a well-known supporter of the NPP community, had held a previous trust position under the NPP administration, and was allegedly demoted shortly after the PPD assumed power."

The evidence before us does not remotely compare with the facts in these cases. Therefore, with the scant information provided we have no option but to conclude that plaintiffs failed in their initial prima facie burden. There is simply no basis in the record for us to conclude that plaintiffs were NPP members and that Cesar Rey was aware of their political affiliation at the time of their transfer requests.

Accordingly, the First Amendment claim is hereby **DISMISSED**.

### Due Process

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

In order to properly assert a procedural due process claim under § 1983, plaintiff must show that: (1) they had a property interest and (2) that defendants, acting under color of state law, deprived them of that property interest without providing them with a constitutionally adequate procedure. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006); Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Rumford Pharmacy v. City of East Providence, 970 F.2d

996, 999 (1ˢᵗ Cir. 1992); PFZ Properties v. Rodriguez, 928 F.2d 28, 30 (1ˢᵗ Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest... cannot be deprived of that interest without due process of law." Figueroa-Serrano, 221 F.3d at 6. Hence, it is only in situations where plaintiff has been able to establish a property right at stake that due process protection comes into play. See, Redondo-Borges v. U.S. Dep't of Housing and Urban Dev., 421 F.3d 1, 7 (1ˢᵗ Cir. 2005) ("[f]or a claim to succeed, the plaintiffs must identify a protected property or liberty interest.")

Property interests, however, are not created by the Constitution but derive instead from state law provisions. "[T]he Constitution does not create property interests; instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Santana v. Calderon, 342 F.3d 18, 23 (1ˢᵗ Cir. 2003) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

A party's unilateral belief does not by itself translate into a property right subject to due process concerns. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it.'" Macone v. Town of Wakefield, 277 F.3d 1, 9 (1ˢᵗ

CIVIL NO. 03-2304 (RLA)                                        **Page 34**

---

Cir. 2002) (*citing* <u>Bd. of Regents</u>, 408 U.S. at 577); <u>Santana v. Calderon</u>, 342 F.3d 18, 24 (2003). *See also*, <u>Redondo-Borges</u>, 421 F.3d at 8 ("In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that [he] has a legally recognized expectation" to the property interest at issue.)

Plaintiffs having requested the transfers themselves we are hard pressed to ascertain what process they claim was due and not afforded nor have plaintiffs put us in a position to ascertain precisely what is it they are claiming.[24] Accordingly, this cause of action is **DISMISSED.**

### SUPPLEMENTAL JURISDICTION

Defendants have also sought to dismiss the two local claims asserted by plaintiffs via our supplemental jurisdiction. For the reasons stated below we find that these claims also warrant dismissal.

### Law 100

Any claim against Mr. Rey in his official capacity pursuant to Law 100 is frivolous. We must bear in mind that actions for damages filed against government employees in their official capacity are deemed actions against the state since the real party in interest is the government and not the official. <u>Pennhurst St. Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101-102, 104 S.Ct. 900, 908-909, 79 L.Ed.2d 67, 79 (1984). Eighteen years ago, in a similar political

---

[24] It is important to note that plaintiffs are not challenging the positions they were transferred to nor is there a claim for failure to recall asserted in the complaint.

discrimination suit filed against the Secretary of Education, the Court of Appeals pointed out that because the definition of "employer" under Law 100 only applies to those "agencies or instrumentalities of the Government of Puerto Rico as may be operating as private businesses or enterprises"[25] and absent evidence to establish that such is the case of the Department of Education, plaintiffs could not prosecute such claim against the Agency. *See*, Marin-Piazza v. Aponte-Roque, 873 F.2d 432, 436 (1st Cir. 1989). Further, even if a viable cause of action existed against the local government under Law 100, plaintiffs would be precluded under the Eleventh Amendment to assert those claims in this jurisdiction either directly against the agency or against its agents in their official capacity. Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 34 (1st Cir. 2006); Jusino v. Zayas, 875 F.2d 986, 993 (1st Cir. 1989); Marin-Piazza, 873 F.2d at 436; Arocho v. Dep't of Labor and Human Resources of P.R., 218 F.Supp.2d 145, 149-50 (D.P.R. 2002).

    With respect to the claims asserted against Mr. Rey in his personal capacity, it is clear that this defendant was not plaintiffs' "employer" and therefore, not subject to liability under this statute. Jusino, 875 F.2d at 993; Marin-Piazza, 873 F.2d at 436 Arocho, 218 F.Supp.2d at 150; Gomez-Vazquez v. Diaz-Colon, 91 F.Supp.2d 481, 483 (D.P.R. 2000).

    Accordingly, the claims asserted under Law 100 are **DISMISSED**.

---

[25]  P.R. Laws Ann. tit. 29, § 151 (2001).

CIVIL NO. 03-2304 (RLA)                                           **Page 36**

---

## Art. 1802

Negligence claims asserted against Mr. Rey in his official capacity pursuant to art. 1082 of the Puerto Rico Civil Code are likewise subject to dismissal based on Eleventh Amendment immunity inasmuch as suits against officers in their official capacity seeking monetary relief are tantamount to actions directly against the state. Will v. Mich. Dep't of St. Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Eleventh Amendment immunity applies even though the state has not been named in the suit. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, no claims for damages may be asserted against a state agency or a state official acting in his official capacity in federal court under the Eleventh Amendment immunity. *See, i.e.*, Destek Gp., Inc. v. St. of New Hampshire Pub. Utilities Com'n, 318 F.3d 32, 40 (1st Cir. 2003); Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 700-701 (1st Cir. 1995).

Based on the foregoing, the negligence claims asserted against Cesar Rey in his official capacity are **DISMISSED**.

Having dismissed all federal claims, we decline to exercise supplemental jurisdiction over the only remaining cause of action in this case, i.e., tort claim against Cesar Rey in his personal capacity. *See*, McGee v. Delica Co., Ltd., 417 F.3d 107 (1st Cir. 2005); Gonzalez v. Family Dept., 377 F.3d 81, 89 (1st Cir 2004).

Accordingly this cause of action is also **DISMISSED**.

---

### CONCLUSION

Based on the foregoing, defendants' Motion for Summary Judgment (docket No. **54**)[26] is **GRANTED**[27] and the complaint filed in this case is hereby **DISMISSED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of August, 2007.


                                   S/Raymond L. Acosta
                                  RAYMOND L. ACOSTA
                           United States District Judge

---

[26]  *See*, Plaintiffs' Opposition (docket No. **73**). Based on the evidence used for our decision, defendants' Motion to Strike (docket No. **76**) is **DENIED AS MOOT.** See, Plaintiffs' opposition (docket No. **85**).

[27]  Given our ruling, there is no need to address the other arguments raised by defendants in their motion.